# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MARCELLUS A. JONES,

      Plaintiff,

      v.

CATELL, *et al.*,

      Defendants.

CIVIL ACTION NO. 1:23-cv-1991

(SAPORITO, J.)

## MEMORANDUM

Plaintiff Marcellus A. Jones, a prisoner proceeding *pro se* and *in forma pauperis*, filed an amended complaint (Doc. 13) alleging that dozens of employees and medical staff at SCI-Camp Hill engaged in a campaign of abuse against him between July 2022 and June 2023. 25 defendants affiliated with the Pennsylvania Department of Corrections[1] have moved to dismiss the complaint in part. (Doc. 15). The Court will grant the motion in part, but permit Jones to pursue some of his First and Eighth Amendment claims and state law tort claims.

---

[1] The "DOC defendants" are defendants Comer, Hoffner, Boose, Hoerner, Walsh, Hosterman, Newsome, Houser, Baptist, Bonetti, Alvord, Benner, Nitchman, Crozier, Boogs, Nicklow, Iagovino, Miller, Noss, Doyle, Mayers, Freed, Flinchbaugh, Misiti, and Rodriguez.

## I.   BACKGROUND

Although Jones labeled the complaint as a "Proposed Amended Complaint," he had the right to file it as a matter of course because it was filed within 21 days after service of a motion to dismiss his prior complaint. *See* Fed. R. Civ. P. 15(a)(1). Therefore, all motions directed to the prior complaint will be denied as moot, and the Court's analysis is directed to the amended complaint and related filings.

Jones's timeline of events is difficult to track, but in essence, he claims that various personnel at SCI-Camp Hill targeted him for abuse because of a prior lawsuit and his complaints against staff. He alleges as follows: On July 6, 2022, defendants Boose, Crozier, Nitchman, and several unnamed individuals confiscated Jones's typewriter for what Jones describes as "retaliatory purposes." Sometime in August 2022, Jones spoke with defendant Benner, a major at SCI-Camp Hill, about recovering property that was missing from Jones's cell (although it is unclear whether the typewriter was among the items discussed). Benner allegedly said: "[B]ecause you're known around here for filing complaints[,] I'm only gonna return some of your stuff . . . I'll always back my guys up against you wanna be jailhouse lawyers." On another

occasion, Jones asked defendants Benner and Nicklow about his missing property and Nicklow responded: "[Y]ou need to be grateful that you got anything [from] us with so many complaints by you, you shouldn't get nothing." Benner then stated: "[Y]ou've gotten all I'm gonna let you have from us [or] else you better file a lawsuit to get it."

On August 6, 2022, Jones was scheduled to attend a court hearing in the Huntingdon County Court of Common Pleas, which was allegedly set "to address Jones['s] petitions for waiver of counsel, and to have the pending charges against him dismissed." However, defendant Alvord, an assistant superintendent at SCI-Camp Hill, "would not allow Jones to appear at this hearing at this time." Instead, defendants Alvord, Kuzar, Newsome, Comer, Gordon, and Hoffner "signed on" to move Jones into a cell with no running water or air circulation during an "extremely oppressive heat wave." The cell was in a "condemned" section of the "medical infirmary area," which was allegedly infested with rodents and cockroaches. Jones alleges that these defendants were aware of the conditions, which were "a torture tactic when they confine people to this specific cell." Jones has also filed another case in this district, *Jones v. Mros*, 4:18-CV-2353 (M.D. Pa. filed Dec. 7, 2018), in which Hoffner is a

defendant. Comer allegedly told Jones he would "be held in this hot ass cell with no water until he dropped his [other] case against Hoffner." Newsome allegedly told Jones: "I support my officers, so you need to leave Hoffner out of your lawsuit [bullsh*t] if you want us to stop putting you in hard cells." It is unclear how long Jones was kept in the cell.

On August 28, 2022, defendants Hoffner and Hosterman stopped Jones in a hallway, and Hoffner allegedly stated: "[N]ow look what we have here, today is the day I'm gonna make you regret that case you filed against me." As he made the statement, Hoffner allegedly struck Jones with a handheld metal detector, while Hosterman "stood by and made snide derogatory statements encouraging Hoffner's attack."

On March 13, 2023, defendants Iagovino and Rodriguez allegedly took several e-cigarettes, tobacco pouches, and legal books from Jones during a strip search. Jones asked them why the items had not been returned to him, and Iagovino responded: "[S]ince you don't know when to stop filing paperwork against us you're not getting nothing back[.] [Y]ou're lucky we don't [f*ck] you up right here." Rodriguez added: "Yes ain't nobody here to help you, so I think you should shut up and keep Hoffner's name out of your snitching mouth." Jones spoke with defendant

Misiti, a housing block supervisor, about this lost property, and Misiti allegedly stated: "I'm gonna stick with my officers and co-workers, now unless you're willing to drop that case against Hoffner I ain't giving you [sh*t]."

In March 2023, defendants Houser and Boogs, a correctional officer and a nurse, respectively, came to Jones's cell. Houser allegedly told Jones "you have to let Dr. [Catell] stick his finger up your ass[] if you want treatment today." Jones stated that he would not allow this, and Boogs allegedly responded, "well you must not want treatment" as Houser and Boogs walked away laughing. Jones alleges he was "never allowed to see anybody about his serious medical needs."

In April 2023, defendants Bonetti and Comer "forced [Jones] into a torture cell" at a time when he was scheduled to receive a daily injection of insulin. An unnamed nurse told him he could not get any insulin "per orders of Dr. Catell." "Days later," Dr. Catell came to Jones's cell and allegedly "asked [Jones] if he wanted a 'hand job' or if he could put a finger up Jones's ass." When Jones refused, Dr. Catell said "you won't get any insulin then," and walked away. The deprivation of insulin caused Jones to experience dizziness, headaches, eye pain, tremors, and

excessive urination.

On April 11, 2023, defendants Boose and Hosterman stopped Jones on his way to get medication. Boose allegedly stated: "[N]o deed goes unpunished you [f*cking] snitch," and Hosterman added: "[W]e'll get even with you for all of those complaints you put in, we're gonna [f*ck] you up real soon."

On May 15, 2023, Hosterman stopped Jones on his way to get insulin and told him: "[Y]ou need to stop filing so many allegations against us, cause you might end up in the hospital for being a little snitch." Jones tried to report this to a lieutenant in the area, at which point Hosterman "ran up behind" Jones and started yelling threats and obscenities at him. Hosterman allegedly said: "I don't care if a lieutenant's here or not I'll kick your ass as soon as you walk away from this nurse's station, in the middle of your cry-baby tattle-telling." Jones attempted to report the threats to a lieutenant again on May 21, 2023, which prompted Hoffner to tell Jones: "[I]t don't matter who you run to here cause nobody'll do anything to stop us from [f*cking] you up."

On May 26, 2023, following an investigation into the July 2022 confiscation of Jones's typewriter, the typewriter was returned to Jones.

Defendants Miller, Mayers, Noss, Doyle, and Freed proceeded to take the typewriter again. At the time, Jones was preparing several court filings using the typewriter's memory, the loss of which allegedly caused a judge to enter an order dismissing one of his cases. Jones asked Miller if the typewriter could be returned, but Miller responded: "I don't give a [f*ck] about any of the legal paperwork you need, so keep crying and use up some more trees with your legal [bullsh*t]." Jones later asked Mayers why the typewriter had been confiscated, and Mayers allegedly said: "[W]e don't like you[,] and since you use that typewriter to write so much snitch paperwork you won't be getting it back on our watch."

On June 28, 2023, Jones was purportedly denied food items that he had purchased from the prison commissary. Jones complained about this, which prompted defendants Flinchbaugh, Newsome, Nicklow, Evans, and Benner to come to his cell.  Flinchbaugh allegedly told Jones: "[S]ince you wanted to be transferred so badly and because you reported that you were being abused you won't mind us sharing the food you ordered with our officers, especially your favorite[,] Hoffner." Benner added: "[W]e know you're not getting the foods you ordered[,] now you should consider it payment for all the trouble you've caused with those complaints you

made." Jones was never given a refund for the food items.

The complaint asserts claims for cruel and unusual punishment, denial of access to the courts, failure to intervene, retaliation, and unspecified "intentional and conversion torts." The complaint asserts an additional claim against defendant Wellpath Solutions ("Wellpath"), SCI-Camp Hill's medical services subcontractor, for purportedly failing to train many of its employees, apparently in connection with Jones's placement in the "torture cell" on August 5, 2022.

## II.    LEGAL STANDARDS

The DOC defendants seek dismissal of numerous claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Under 28 U.S.C. § 1915A, the Court is also obligated to screen any civil complaint in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A; *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court has a similar obligation with respect to actions brought in forma pauperis and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(i); id. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1); *see generally Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation

screening procedures and standards).

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6). *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d

160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). The Court also disregards allegations made only in a prior complaint, *see Argentina v. Gillette*, 778 F. Appx 173, 175 n.3 (3d Cir. 2019), and any new factual allegations made in the brief opposing the motion to dismiss, *see Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104 (3d Cir. 2016) (citation omitted).

Jones asserts claims under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a Section 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged

- 10 -

violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Further, "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As explained by the Third Circuit Court of Appeals:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

## III. DISCUSSION

### A. Retaliation Claims

To state a prima facie case of First Amendment retaliation, a plaintiff must show that (1) he was engaged in constitutionally protected conduct, (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action. *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting

*Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

"[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity" for purposes of a retaliation claim. *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011). Causation can be shown through "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or "a pattern of antagonism coupled with timing to establish a causal link." *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). In some cases, causation can be established "from the evidence gleaned from the record as a whole." *Id.*

Based on the remarks attributed to defendants Mayers, Flinchbaugh, Misiti, Iagovino, Rodriguez, and Benner, the complaint supports an inference that these defendants either permanently confiscated Jones's property or confiscated it for an extended period[2], at

---

[2] A permanent deprivation of an inmate's property is an adverse action for retaliation purposes. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013). A short-term deprivation, or a "delay" in returning property, may not be sufficient. *See, e.g., Coit v. Grohowski*, No. 1:20-CV-1075, 2021 WL 4033116, at *6 (M.D. Pa. Sept. 3, 2021) (listing cases); *Nunez v. Wertz*, No. 3:14-CV-0727, 2017 WL 3868524, at *9 (M.D. Pa. Sept. 5, 2017). The complaint is not entirely clear as to how long Jones was deprived of the various items, but affording him all reasonable *(continued on next page)*

least in part because of Jones's prior lawsuit or his other "complaints."[3]

Jones has also plausibly alleged retaliation claims against Comer, Hoffner, and Newsome, based on those defendants' alleged decision to place him in a cell that was infested with vermin without air circulation during a heat wave.[4]

The movants seek dismissal of the claims against Benner, Flinchbaugh, and Misiti, arguing that Jones's allegations suggest only a "failure to address a grievance" about lost property, which is not itself an

---

inferences, it appears that all relevant items were either withheld for several months or never returned.

[3] At the pleading stage, the Court infers that Jones's complaints were protected activity, although it is not always clear whether they were written grievances or oral complaints. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-99 (3d Cir. 2016) (recognizing an oral complaint as protected activity).

[4] Although "the law is unsettled as to whether the placement of an inmate in a dirty, unsanitary cell for several days constitutes an adverse action for the purposes of a retaliation claim," Jones sufficiently alleges that these conditions could have deterred a person of ordinary firmness from exercising his First Amendment rights. *See Hagan v. Mason*, No. 1:19-CV-2120, 2021 WL 4502236, at *8 (M.D. Pa. Sept. 30, 2021); *see also Kapellusch v. Schnell*, No. 1:23-CV-00226-SPB-RAL, 2024 WL 5319116, at *7 (W.D. Pa. Dec. 5, 2024), report and recommendation adopted sub nom. *Kappelusch v. Schnell*, No. 1:23-CV-00226-SPB-RAL, 2025 WL 72794 (W.D. Pa. Jan. 10, 2025).

adverse action. But the statements attributed to these defendants do not merely indicate that they fielded his complaints, but also that they exercised control over Jones's property and withheld it from him because of those complaints.[5]

The movants also seek dismissal of the claims against Mayers, Flinchbaugh, Iagovino, Rodriguez, and Benner for lack of causation. Specifically, they argue that any retaliation allegedly motivated by Jones's prior civil suit against Hoffner is implausible, because it was filed in 2018 and the events here took place in 2022 and 2023. However, the Court takes judicial notice that in that case, the Court granted partial summary judgment in August 2022, the parties engaged in unsuccessful mediation between September and December 2022, and the parties contested pre-trial motions filed by Jones in April 2023. *See Jones v. Mros*, 4:18-CV-2353 (M.D. Pa. filed Dec. 7, 2018). Given these events, the timing of the alleged retaliation is plausible.

---

[5] *See* (Doc. 13 at 8-9) (Benner: "[B]ecause you're known around here for filing complaints[,] I'm only gonna return some of your stuff"; Flinchbaugh: "[B]ecause you reported that you were being abused you won't mind us sharing the food you ordered with our officers[.]"; Misiti: "[U]nless you're willing to drop that case against Hoffner I ain't giving you [sh*t].").

Defendants also argue that Jones has not plausibly alleged that these defendants would be retaliating for complaints against other officers, citing cases in which courts declined to make that inference. However, this is not a case where the plaintiff merely assumes retaliation from unrelated complaints and invites the Court to make the same inference.[6] Here, each surviving defendant is alleged to have directly attributed their adverse actions to Jones's prior complaints, allegations that are entitled to the presumption of truth at the pleading stage.

However, Jones's retaliation claims against seventeen other defendants will not proceed, including the following[7]:

- **Nicklow**: Although Nicklow allegedly commented that Jones "should be grateful" for a partial return of his property, and "should[] get nothing," the complaint does not allege that Nicklow possessed Jones's property or that he was responsible

---

[6] *Cf. Murray v. McCoy*, No. 1:21-CV-320, 2023 WL 2285877, at *8 (M.D. Pa. Feb. 28, 2023) (rejecting claim where plaintiff's complaint "implied" retaliation by officers based on complaints against other officers); *Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *4-5 (M.D. Pa. Dec. 3, 2010) (plaintiff's complaint merely "claimed" retaliation based on a grievance filed against another officer).

[7] Any other intended defendants are omitted because the complaint suggests no plausible adverse action or retaliatory motive.

for deciding whether it should be returned. Nicklow's apparent threat about what Jones "should get," although unpleasant, is not an adverse action for retaliation purposes. *See Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009). Roughly twelve months later, Nicklow was among the officers who visited Jones's cell following the alleged confiscation of his commissary items, but there is no indication that he was responsible for confiscating the food, or that there is any connection between that incident and his prior remarks.

- **Boose, Crozier, and Nitchman**: These defendants are alleged to have confiscated Jones's typewriter for "retaliatory purposes." This conclusory allegation is insufficient to state a claim. Ten months later, Boose was alleged to have told Jones "no deed goes unpunished you [f*cking] snitch," but the complaint does not support an inference that this was in any way connected to the typewriter incident 10 months before. Jones does not allege any other adverse action connected to the verbal harassment.

- **Alvord, Kuzar, and Gordon**: These defendants are alleged to

- 16 -

have "signed on to" placing Jones in what he calls the "torture cell." However, in contrast to Comer, Hoffner, and Newsome, the complaint does not allege that these individuals did so in retaliation for filing complaints.

- **Hosterman**: Hosterman is alleged to have made a variety of threatening or abusive remarks to Jones because of his complaints or grievances. As noted, verbal abuse does not sustain a retaliation claim, and the complaint does not describe any specific adverse action taken by Hosterman against Jones.

- **Noss, Doyle, Freed, and Miller**: These defendants were alleged to have confiscated Jones's typewriter in July 2023, but the complaint does not support an inference that they did so out of retaliation. Miller is quoted to have said, after the fact: "I don't give a [f*ck] about any of the legal paperwork you need, so keep crying . . .". While this statement indicates a lack of concern toward Jones's complaints, that does not itself support an inference that Miller confiscated the typewriter because of those complaints.

- **Evans**: Evans was among the officers who visited Jones's cell following the alleged confiscation of his commissary items, but there is no indication that he was responsible for confiscating the items.

## B. State Law Tort Claims

Jones asserts unspecified state law "intentional and conversion torts" against various defendants. Defendants seek dismissal of Jones's state tort claims on the basis that Pennsylvania has not waived sovereign immunity, but Pennsylvania law recognizes an exception to sovereign immunity for certain claims for "damages arising out of a negligent act" caused by "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties." 42 Pa. Con. Stat. Ann § 8522(a), (b)(3)); *see, e.g., Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (unpublished).[8]

---

[8] Defendants point to a case from the Western District of Pennsylvania in which the court granted summary judgment to prison officers on a conversion claim, finding that they were immune from suit because the record indicated their acts were intentional rather than negligent. *See Walton v. Harkleroad*, No. 2:13-CV-1109, 2016 WL 11480713, at *7 (W.D. Pa. Mar. 3, 2016), report and recommendation adopted sub nom. *Walton v. Corr. Officer Harkleroad*, No. 2:13-CV-1109, 2016 WL 3963214 (W.D. Pa. July 21, 2016). This appears to be at odds

*(continued on next page)*

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995). Jones plausibly avers claims against the defendants who allegedly confiscated his property: Boose, Crozier, and Nitchman (typewriter); Iagovino and Rodriguez (e-cigarettes, tobacco pouches, and legal books); and Miller, Mayers, Noss, Doyle, and Freed (typewriter). Jones also states plausible claims against six defendants who, while not alleged to have confiscated Jones's property, allegedly had control over the property and refused to return it: Misiti (e-cigarettes, tobacco pouches, and legal books); Flinchbaugh, Newsome, Nicklow, and Evans (commissary items); and Benner (commissary items and other unspecified property).

The Court also construes Jones's complaint as stating a claim for trespass to chattels against these sixteen defendants. The elements of

---

with the Third Circuit's interpretation in several unpublished cases recognizing conversion as a plausible remedy for apparently intentional deprivations of prisoners' property. *See, e.g., Harris v. Wetzel*, 822 F. App'x 128, 129 (3d Cir. 2020). Regardless, dismissal on this ground would not be appropriate at the pleading stage.

trespass to chattels are "essentially the same" as conversion. *Real v. Wetzel*, No. 19-CV-4128, 2019 WL 6828636, at *8 (E.D. Pa. Dec. 12, 2019) (quoting *Rosemont Taxicab Co. v. Philadelphia Parking Auth.*, 327 F. Supp. 3d 803, 828 (E.D. Pa. 2018)); *see Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 708 (2005) ("A trespass to a chattel may be committed by intentionally dispossessing another of the chattel, or using or intermeddling with a chattel in the possession of another.") (citations omitted). The tort may apply when the degree of interference with the property is "not sufficiently important to be classified as conversion, thereby allowing for damages less than the full market value of the chattel in question."[9] *Deitrick v. Costa*, No. 4:06-CV-01556, 2015 WL 1606641, at *16 (M.D. Pa. Apr. 9, 2015). The complaint does not support any other tort claims for which Pennsylvania has waived sovereign immunity.

## C. Denial of Access to Courts

Next, Jones pursues a claim for denial of access to the courts. To

---

[9] As potentially relevant here, trespass to chattels provides a remedy when the possessor is merely "deprived of the use of the chattel for a substantial time." *See Dickerson v. DeSimone, Inc.*, No. 1581 EDA 2015, 2016 WL 5921721, at *3 n.2 (Pa. Super. Ct. Sept. 7, 2016) (citing Restatement (Second) of Torts §§ 217, 218).

state a claim, a plaintiff must show (1) that he suffered an "actual injury," *i.e.*, that he lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205 (quoting *Christopher*, 536 U.S. at 416-17). "Prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Id.* Here, Jones alleges that an unspecified case against him would have been dismissed if defendant Alvord had permitted him to attend a hearing in the Huntingdon County Court of Common Pleas. He also alleges that another case, presumably one that he filed, was dismissed because he was unable to prepare a filing with his typewriter. However, he does not describe the cases in sufficient detail to support an inference that he lost a non-frivolous claim or defense. Nor does he allege that the cases involved a direct or collateral challenge to his sentence or

his conditions of confinement. Accordingly, this claim may not proceed.[10]

### D. Non-Medical Eighth Amendment Claims

The complaint suggests three potential Eighth Amendment claims that do not involve medical care: a conditions of confinement claim based on what Jones refers to as the "torture cell," an excessive force claim against Hoffner for striking him with a metal detector, and a claim against Hosterman for failure to intervene in the metal detector incident.

Jones's allegations regarding the "torture cell" support an inference of an Eighth Amendment violation. The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency," including deprivations of "the minimal civilized measure of life's necessities." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). The conditions must pose a "substantial risk of serious harm," and the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511

---

[10] Jones also asserts a "Class of One" claim on the basis that the defendants "subjected Jones to worse treatment than people confined at [SCI-Camp Hill] that engaged in legal pursuits." However, he has not alleged facts about how these prisoners were treated, or that these prisoners were "similarly situated" to Jones, as would be required to state a Fourteenth Amendment equal protection claim. *See Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010).

U.S. 825, 834 (1994). The complaint must support an inference of deliberate indifference, meaning that the named defendants "actually knew of and disregarded constitutional violations." *Thomas*, 948 F.3d at 138 (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001)).

Although there is no precise standard for when unpleasant or unsanitary conditions become an Eighth Amendment violation, "[i]t is clear under *Wilson* that extreme cell temperatures may satisfy the objective deprivation requirement . . . if warranted by the surrounding circumstances," which is "often an issue to be determined by the trier of fact." *Forshey v. Huntingdon Cnty.*, No. 1:13-CV-00285, 2016 WL 7743050, at *3 (M.D. Pa. Dec. 9, 2016) (citing *Sampson v. Berks Cty. Prison*, 171 Fed. Appx. 382, 385 (3d Cir. 2006)); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) ("Although we recognize that the Eighth Amendment does not mandate comfortable prisons, we believe that inmates do have a right to be free of conditions that generate infestations of vermin.") (quotation and citation omitted).[11] At the

---

[11] *But see Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (where plaintiff alleged "inadequate plumbing," infestation with "cockroaches, spiders, worms, [g]nats, mice and other unknown insects," lack of ventilation, and temperatures of 100-105 degrees, he failed to
*(continued on next page)*

pleading stage, Jones's allegations of persistent heat, vermin infestation, and lack of ventilation suggest a sufficiently serious deprivation. Defendants seek dismissal on the basis that Jones "admits he was only in the cell for one day" (Doc. 16 at 17, citing Doc. 13 ¶ 39), but the Court finds no such admission in the cited paragraph or elsewhere in the complaint. Jones further alleges that the defendants allegedly responsible, Alvord, Kuzar, Newsome, Comer, Gordon, and Hoffner, were aware of the conditions and placed Jones in that cell with the intent of exposing him to those conditions. Accordingly, Jones may proceed on conditions of confinement claims against these defendants.[12]

Jones may also proceed on an excessive force claim against Hoffner and the attendant failure to intervene claim against Hosterman. The Eighth Amendment prohibits prison officials from unnecessarily and

---

alleging that "any of the conditions in his cell jeopardized, or potentially jeopardized, his health, or caused the cell to be unfit for habitation").

[12] As noted above, Jones asserts a claim against Wellpath for inadequate training of employees, apparently relating to the "torture cell." However, other than repeating the phrase "failure to train," Jones does not allege any facts that would explain how Wellpath's training was inadequate, nor identify any other Wellpath policy or custom that caused the allegedly unconstitutional conditions. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For an excessive force claim, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Banks v. Meck*, 531 F. App'x 205, 207 (3d Cir. 2013) (quoting *Hudson*, 503 U.S. at 7). Jones offers only a vague description of this incident, but he alleges that Hoffner struck him with a handheld metal detector and said, "today is the day I'm gonna make you regret that case you filed against me." This remark would support an inference that Hoffner applied force to cause harm and without a legitimate purpose. At the pleading stage, Jones may proceed even though he has not alleged that he sustained significant injury from the attack. *See Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010).

Jones alleges that Hosterman "stood by and made snide derogatory statements encouraging Hoffner's attack." An officer may be liable for failure to intervene in excessive force against a prisoner if the attending officer "had a reasonable opportunity to intervene and simply refused to do so." *See Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002). Hosterman's alleged remark supports that inference here. Accordingly,

Jones may proceed on a failure to intervene claim against Hosterman.[13]

### E. Medical Claims

Jones alleges that various defendants denied him medical treatment or prevented him from seeking it. For an Eighth Amendment claim based on denial of medical care, a plaintiff must "make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Jones complains of a March 2023 incident in which officers Houser and Boogs approached Jones's cell and told him "you have to let Dr. [Catell] stick his finger up your ass[] if you want treatment today." Jones refused, and Houser and Boogs "walked away laughing." Even assuming

---

[13] Although Jones asserts a general claim for "failure to intervene" against all defendants, apparently based on their failure to stop other retaliatory conduct alleged in the complaint, courts have declined to recognize such a claim beyond the context of excessive force. *See*, *e.g.*, *Armstrong v. Furman*, No. 3:19-CV-141, 2020 WL 5545270, at *6 (W.D. Pa. Sept. 16, 2020) (citing *Weimer v. Cnty. of Fayette, Pennsylvania*, 972 F.3d 177, 191 (3d Cir. 2020)). To the extent Jones identifies any defendant with the requisite personal involvement in any of his surviving claims, the claims proceed against those defendants directly.

from this vague description that Houser and Boogs prevented Jones from seeking medical attention, the complaint provides no basis to infer that the officers knew Jones had an objectively serious medical need. Jones also alleges that in April 2023, Bonetti and Comer placed Jones in a "torture cell" at a time when he was scheduled to receive insulin. But again, the complaint does not support an inference that Bonetti and Comer were aware of an objectively serious medical need or that they prevented him from receiving medical care in the cell.

Finally, Jones asserts claims based on an April 2023 incident in which Dr. Catell allegedly denied him insulin.[14] Jones alleges that he is a "'High Risk' diabetic who needs many doses of insulin daily," which contradicts own allegation in the same paragraph that he was prescribed a "daily" dose. He alleges that he suffered "dizziness, headaches, eye pain, tremors, and excessive urination" from the deprivation of insulin. Even accounting for the inconsistent allegations, the complaint supports an

---

[14] Jones appears to allege a connection between Dr. Catell's alleged conduct and the various claims of retribution by non-medical officers that make up the rest of the complaint. For this reason, the Court will not dismiss or sever this claim as misjoined pursuant to Federal Rule of Civil Procedure 20(a)(2), but we may issue future orders as appropriate. *See* Fed. R. Civ. P. 21, 42(b).

inference of a serious medical need. *See Perkins v. Schwappach*, 313 F. App'x 473, 476 (3d Cir. 2008) (at the pleading stage, allegations of a "relatively brief" denial of insulin requiring emergency treatment were sufficient).

Jones alleges that after he refused to perform a sexual act, Dr. Catell told him "you won't get any insulin then." This allegation, assumed as true at the pleading stage, supports an inference that Dr. Catell was aware of Jones's need for insulin and delayed necessary medication for a non-medical reason. *See Rouse*, 182 F.3d at 197 (deliberate indifference exists where a defendant "delays necessary medical treatment based on a non-medical reason" or "prevents a prisoner from receiving needed or recommended medical treatment").

## IV. CONCLUSION

For the reasons described above, Jones will be permitted to proceed on the following claims:

1.    First Amendment retaliation claims against Mayers, Flinchbaugh, Misiti, Iagovino, Rodriguez, Benner, Comer, Hoffner, and Newsome;

2.    Eighth Amendment conditions of confinement claims against

Alvord, Kuzar, Newsome, Comer, Gordon, and Hoffner;

3.    An Eighth Amendment excessive force claim against Hoffner;

4.    An Eighth Amendment failure to intervene claim against Hosterman;

5.    An Eighth Amendment claim for denial of medical care against Dr. Catell;

6.    State law claims of conversion and trespass to chattels against Boose, Crozier, Nitchman, Iagovino, Rodriguez, Miller, Mayers, Noss, Doyle, Freed, Misiti, Flinchbaugh, Newsome, Nicklow, Evans, and Benner.

An appropriate order follows.


Dated: January 29, 2025                    *s/Joseph F. Saporito, Jr.*
                                           JOSEPH F. SAPORITO, JR.
                                           United States District Judge